Slip-Op. 12-53

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DECKERS OUTDOOR CORP.,<br><br>            Plaintiff,<br><br>      v.<br><br>UNITED STATES,<br><br>            Defendant. | **Before: Gregory W. Carman, Judge**<br><br>**Court No. 08-00410** |

OPINION

[Granting Defendant's motion for summary judgment]

Dated: April 24, 2012

    *Patrick D. Gill* and *William J. Maloney*, of counsel, Rode & Qualey, of New York, NY, for Plaintiff.

    *Marcella Powell*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With her on the briefs were *Tony West*, Assistant Attorney General, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, and *Yelena Slepak*, Office of Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection, of counsel.

CARMAN, JUDGE: At issue in this case is the proper tariff classification of boots imported

by Plaintiff in 2006 and 2007. United States Customs and Border Protection ("Customs")

classified the boots in subheading 6404.19.35, HTSUS as "footwear of the slip-on type,

that is held to the foot without the use of laces or buckles or other fasteners." Plaintiff

claims the boots should instead be classified in basket provision 6404.19.90 as other

footwear valued at more than $12 per pair.

Defendant moves for summary judgment pursuant to USCIT Rule 56. For the

reasons given below, the motion will be granted and judgment will issue for Defendant.

## BACKGROUND

Plaintiff Deckers Outdoor Corporation ("Deckers") imported the merchandise at

issue, which consists of the UGG Classic Crochet model boot ("Classic Crochet"). (Def.'s

Statement of Undisputed Material Facts ("Def.'s Facts") ¶¶ 1–2, ECF No. 29.) Both

parties agree that the Classic Crochet is footwear intended to be worn on the foot; more

specifically, they agree that it is a boot with a rubber sole and knit upper that has no

laces, buckles, or other fasteners to hold it to the foot. (Def.'s Facts ¶¶ 3–13.) To don the

boots, a wearer must grip the top of the woven textile upper with two hands, insert the

foot into the opening, and pull the boot up forcefully while adjusting the foot until the

foot and calf are securely ensconced in the boot with the heel properly set. (Pl.'s Am.

Statement of Genuine Material Facts Which Are at Issue ¶¶ 3, 5 ("Pl.'s Facts"), ECF No.

40–2; Def.'s Resps. to Pl.'s Am. Statement of Genuine Material Facts Which Are at Issue

¶¶ 3, 5, ECF No. 49.)

Customs classified the entries under 6404.19.35, HTSUS:

6404   Footwear with outer soles of rubber, plastics, leather or
       composition leather and uppers of textile materials:

              Footwear with outer soles of rubber or plastics:

6404.19                    Other:

> Footwear with open toes or open heels; footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners, the foregoing except footwear of subheading 6404.19.20[1] and except footwear having a foxing[2] or foxing-like band wholly or almost wholly of rubber or plastics applied or molded at the sole and overlapping the upper:

6404.19.35                         Other

(Compl. ¶ 6, ECF No. 5; Ans. ¶ 6, ECF No. 8.) Merchandise in 6404.19.35, HTSUS was

dutiable at 37.5% *ad valorem*. Plaintiff had requested that the Classic Crochet boot be

categorized instead under subheading 6404.19.90, which differed from the subheading

above as follows:

------

[1] Subheading 6404.19.20 covers "[f]ootwear designed to be worn over, or in lieu of, other footwear as a protection against water, oil, grease or chemicals or cold or inclement weather" and does not apply to the Classic Crochet style UGG boots.

[2] A "foxing" is "a strip of material, separate from the sole and upper, that secures the joint where the upper and sole meet, usually attached by a vulcanization process or by cementing or stitching" that "must be applied or molded at the sole and overlap the upper and substantially encircle the entire shoe." What Every Member of the Trade Community Should Know About: Footwear; An Informed Compliance Publication, U.S. Customs and Border Protection, April 2010, Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Ex. H at 13–14. The Court's examination of Def.'s Mot., Ex. A (a pair of the boots at issue) establishes, and the parties do not contest, that the foxing or foxing-like band on the Classic Crochet UGG boots is not "wholly or almost wholly of rubber or plastics" and therefore this exception does not apply to the Classic Crochet boots.

Other:

6404.19.90                                   Valued over $12/pair

Merchandise in 6404.19.90 was dutiable at 9% *ad valorem*.

Plaintiff, as importer of record, timely protested liquidation under 6404.19.35 pursuant to section 514 of the Tariff Act of 1930, 19 U.S.C. § 1514; Customs denied the protests, Plaintiff paid all liquidated duties, and then commenced this lawsuit. (Compl. ¶¶ 1–5; Answer ¶¶ 1–5.)

The Court faces two overarching issues: whether there is any question of material fact that would preclude summary judgment; and, if not, in which subheading of the Harmonized Tariff Schedule of the United States Plaintiff's merchandise should be categorized. Concluding that no material facts are in issue and that the case is therefore appropriately resolved on summary judgment, the Court affirms Customs' classification of the Classic Crochet boots under 6404.19.35 for the reasons set forth below.

ANALYSIS

## I.   Jurisdiction and Standard of Review

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a). The Court of International Trade will grant summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." USCIT Rule 56(c). In deciding a summary judgment motion, the Court reviews all

evidence submitted and draws all inferences against the moving party. See Matsushita

Elecs. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The movant must

demonstrate that there is no issue of material fact; otherwise, a trial to resolve factual

questions is warranted. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In a Customs classification case, regardless of the classifications advocated by the

parties, the CIT has the responsibility of determining "the correct result, by whatever

procedure is best suited to the case at hand." Jarvis Clark Co. v. United States, 733 F.2d

873, 878 (Fed. Cir. 1984) (emphasis in original). In finding the correct classification

result, the Court rules de novo "upon the basis of the record made before the court." 28

U.S.C. § 2640(a)(1); Universal Electronics, 112 F.3d at 493.[3]

## II.   Contentions of the Parties

### A.   Whether Issues of Material Fact Exist

As an initial matter, the parties disagree as to whether any issues of material fact

are in contention. This dispute is easily resolved in Defendant's favor.

The government insists that there is no dispute as to the physical characteristics

---

[3] Although classification decisions by Customs are statutorily presumed to be correct, this has no effect when the court decides pure issues of law in a summary judgment determination. See 28 U.S.C. § 2639(a)(1), Universal Electronics v. United States, 112 F.3d 488, 492–93 (Fed. Cir. 1997); see also Container Store v. United States, 35 CIT ___, ___, 800 F. Supp. 2d 1329, 1333–1334 (2011).

of the Classic Crochet boots, and explicitly concedes Deckers' factual assertions: that the

merchandise is "sold as boots, that the boots can be pulled on with the hands, and that

the boots extend above the ankle[.]" (Def.'s Reply at 5–6.) Therefore, in Defendant's

view, no factual issues require trial and the case is ripe for the Court to decide, as a

matter of law, into which tariff subheading the merchandise properly falls. (Def.'s Reply

at 7.) Instead of arguing that there are material issues of fact as to the physical

characteristics of the Classic Crochet boots, Deckers contends that the differences

between the parties over the meaning of the phrase "footwear of the slip-on type, that is

held to the foot without the use of laces or buckles or other fasteners" in 6404.19.35

constitutes an issue of material fact that must be resolved at a trial. (Pl.'s Brief in Opp'n

to Def.'s Mot. for Summary J. ("Pl.'s Opp.") 12–13.) Deckers claims it "should be

afforded the opportunity to present evidence to contradict the government's utterly

unsupported conclusions with respect to the application of the term [slip-on] to the

boots in issue." (Id. at 13.)

Plaintiff is mistaken. Determining the correct classification of merchandise

requires the Court to first "construe the relevant classification headings," which is a

purely legal question, and then to determine "under which of the properly construed

tariff terms the merchandise at issue falls." Bausch & Lomb, Inc. v. United States,

148 F.3d 1363, 1365 (Fed. Cir. 1998). Where the nature of the merchandise is not at issue,

the question "collapses entirely into a question of law" ripe for disposition on summary

judgment. <u>Cummins Inc. v. United States</u>, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (citations

omitted). As <u>Jarvis Clark</u> instructs, the Court bears the obligation to determine the

correct classification of the merchandise. 733 F.2d at 878. The Court has a sample of the

Classic Crochet boots and has examined that sample. (Def.'s Mem. at Ex. A.) The parties

do not dispute any relevant characteristic of the boots, but dispute only the proper

construal of the terms in 6404.19.35. There being no dispute as to the nature of the

merchandise, the question before the Court has collapsed into a pure question of law

and is appropriately decided on summary judgment, as per <u>Cummins</u>, <u>supra</u>. The Court

therefore holds that Plaintiff is not entitled "to present evidence to contradict the

government's . . . conclusions with respect to the application of the term [slip-on] to the

boots in issue." (<u>See</u> Pl.'s Opp. at 13.)

**B.     The Meaning of the Phrase "Footwear of the Slip-on Type, That Is Held to the Foot Without the Use of Laces or Buckles or Other Fasteners"**

The parties dispute the proper construal of the phrase "footwear of the slip-on

type, that is held to the foot without the use of laces or buckles or other fasteners" in the

tariff provision. (Def.'s Mem. at 7; Pl.'s Opp. at 13.) While Defendant urges the Court to

affirm its decision that the phrase applies to the boots, Plaintiff insists that "footwear of

the slip-on type" only denotes footwear that does not extend above the ankle and

cannot include Plaintiff's merchandise, which extends above the ankle. (<u>See</u> Pl.'s Opp. at 4.)

       1.   <u>Defendant's Construal of the Relevant Language</u>

Defendant asserts that "[t]he phrase 'that is held to the foot without the use of laces or buckles or fasteners' qualifies the phrase 'slip-on type,' and the phrase 'slip-on type' qualifies the term 'footwear.'" (Def.'s Mem. at 8.)

The government correctly notes that the term "footwear" is not defined in the HTSUS or Explanatory Notes. (<u>Id.</u>) The government quotes dictionaries that define the word footwear as "wearing apparel (as shoes or boots) for the feet," and "[a]ny foot covering in the form of shoes, boots, slippers, or hose used for utility and/or dresswear" but "[n]ot necessarily synonymous with shoes, which are simply one category of footwear." (<u>Id.</u> at 9 (<u>citing</u> <u>Merriam Webster</u>, http://merriam-webster.com/dictionary/ footwear <u>and</u> <u>The Complete Footwear Dictionary</u> (2d Ed. 2000) (excerpted at Def. Mem., Ex. I)).)

Defendant also points to <u>Footwear Definitions</u>, a document consisting of originally internal "footwear definitions used by Customs import specialists in classifying footwear," which Customs released to the public in 1993 with the goal of helping importers "in better understanding classification requirements." <u>Footwear Definitions</u>, 27 Cust. B. & Dec. 312, 312 (Oct. 25, 1993) (provided at Def. Mem., Ex. B)

("Footwear Definitions"). In the entry for "Slip-On," Footwear Definitions states:

> A "slip-on" includes:
> 1.    A boot which must be pulled on.
> 2.    Footwear with elastic gores which must be stretched to get it
>       on or with elastic sewn into the top edge of the fabric of the
>       upper.
> 3.    Footwear with a shoe lace around the top of the upper which
>       is clearly not functional, i.e., the lace will not be tied or untied
>       when putting it on or taking it off.
> It does not include any boot or shoe with any laces, buckles, straps,
> snaps, or other closure, which are probably closed, i.e. tied, buckled,
> snapped, etc., after the wearer puts it on.

Id. at 320. Defendant admits that Footwear Definitions is not binding authority, but

claims it has persuasive power because it "is consistent with the language of

[6404.19.35], has been applied for many years, and [because] it comports with industry

usage[.]"  (Def.'s Mem. at 12.)

    To show that Footwear Definitions is consistent with "the footwear industry's

and footwear retailers' concept of 'footwear of the slip-on type,'" Defendant provides

examples from online shopping websites in which boots are described as "slip-on." (Id.

at 11 and Ex. D.) These examples include Shopzilla, which lists a boot called an "Orvis

UGG Slip-On"; the Orvis website, which describes "UGG Slip-On Sheepskin Boots" as

"Ugg's best-selling winter boots"; Zappos, which lists the UGG Newbreak as "a

traditional, yet masculine boot" with a "leather upper in an easy slip-on silhouette"; the

official UGG Australia website, where a search for the term "slip-on" returns results

including over-the-ankle footwear[4] such as the Men's Brockman, Men's Leighton,

Women's Sundance II, and Women's Classic Mini; and Robert Frost Fine Footwear,

which lists the UGG Australia Ayer Slip-On Boot in Stout as a "classic pull-on boot"

with a gore that "lets you take this boot on and off with ease." (Id. at Ex. D.)

From this, the government argues that the drafters of 6404.19.35 "understood the

term 'slip-on type' applies to all types of footwear, including boots." (Def.'s Mem. at 10.)

In the government's view, construing the statute to include slip-on boots "gives effect to

every term in the statute and does not render any portion of the statute surplusage."

(Id.)

Finally, in reply to Plaintiff's opposition, the government points out that Plaintiff

interprets the subheading at issue in such a way as to place import solely on the word

"slip-on"—reading the term "footwear" out of the statute by narrowing it to only

signify shoes, and rendering the phrase "held to the foot without the use of laces or

buckles or other fasteners" superfluous because "Decker's definition of 'slip-on' already

requires shoes to be held to the foot without fasteners." (Reply Mem. in Further Supp.

of Def.'s Mot. for Summ. J. ("Def.'s Reply") at 8, ECF No. 39.) The government also

attacks Deckers' contention that the term "slip-on" can only apply to shoes which can

---

[4] Based on the Court's interpretations of the thumbnail photographs included in Defendant's exhibit.

be donned without the use of the hands, pointing out that the definitions cited by

Deckers encompass garments that must be pulled on over the head with the use of the

hands. (Id. at 13.)

      2.    Plaintiff's Construal of the Relevant Language

    Deckers' key contention is that the term "footwear," restricted by the term "slip-

on," cannot include boots. (Pl.'s Opp. at 14.) Plaintiff states that "as a prerequisite for

classification in 6404.19.35, HTSUS, the footwear must be of the slip-on type, which is a

well known and well defined category of footwear that does not include boots." (Id.)

    So while Deckers concedes that "there is no dispute that the subject boots are

'footwear'," Deckers cites several dictionary definitions of "slip-on" in which the only

type of footwear mentioned is a "shoe." (Id. at 15, 17–18.) Plaintiff then quotes

definitions of "shoe" and "boot" that tend to indicate that a shoe is a type of footwear

reaching only as high as the ankle, in contrast to a boot, which reaches above the ankle.

(Id. at 18–19.) Having argued that slip-ons are a subcategory of shoes, and that the

category of shoes excludes all boots, Deckers presses the conclusion that the common

and commercial meaning of the phrase "footwear of the slip-on type" cannot include

the Classic Crochet boots because they are not shoes. (Id.) Finally, Plaintiff cites a report

to the Senate Finance Committee on the Multilateral Trade Negotiations of 1979, which

stated that the "final U.S. position provides separate categories for boots and slip-on

footwear . . . ." (Id. at 19 (quoting Committee Print 98-27, Senate Committee on Finance,

96th Congress, 1st Session, at 125–26 (Aug. 1979), attached to Pl.'s Opp. as Ex. 4).)

Plaintiff asserts that this Congressional report "recognized" that boots were distinct

from "slip-on footwear." (Id.)

### III.   Customs Properly Classified the Merchandise Under 6404.19.35, HTSUS

Because the Court concludes that the Classic Crochet boot is properly classified

under 6404.19.35, HTSUS, Customs' classification is upheld and judgment will issue for

Defendant.

In determining the correct classification of Plaintiff's merchandise, the Court will

construe the statute in a manner that will carry out legislative intent and "give effect, if

possible, to every word Congress used." See Reiter v. Sonotone Corp., 442 U.S. 330, 339

(1979). Terms contained in the tariff subheadings will be construed "in accordance with

their common and popular meaning, in the absence of a contrary legislative intent."

E.M. Chemicals v. United States, 920 F.2d 910, 913 (Fed. Cir. 1990). The Court may look

to "dictionaries, scientific authorities, and other reliable information sources" in

determining the common meaning of a term. Rollerblade, Inc. v. United States, 282 F.3d

1349, 1352 (Fed. Cir. 2002).

The Court must also follow the Harmonized Tariff Schedule's General Rules of

Interpretation (GRIs), which govern classification of goods. Id. The Court applies the

GRIs in numerical order until the proper heading for classification is reached. Arko

Foods Int'l, Inc. v. United States, 654 F.3d 1361, 1364 (Fed. Cir. 2011). The GRIs relevant

in this case are GRI 1 and GRI 6. To determine within which heading merchandise falls,

the Court begins with GRI 1, which provides that "classification shall be determined

according to the terms of the headings and any relative section or chapter notes." GRI 1,

HTSUS. Determinations as to the appropriate subheading within a heading to apply to

merchandise are subject to GRI 6, which states that "classification of goods in the

subheadings of a heading shall be determined according to the terms of those

subheadings and any related notes and, mutatis mutandis, to the [other GRIs.]" GRI 6,

HTSUS.

### A.    Proper Heading Is 6404, HTSUS

Applying GRI 1 and examining the headings within the Harmonized Tariff

Schedule, the Court determines that only heading 6404 of Chapter 64, covering

"Footwear with outer soles of rubber, plastics, leather or composition leather and

uppers of textile materials," applies to the Classic Crochet.[5] The Classic Crochet boots

---

[5] The other headings do not apply. See Chapter 64, HTSUS generally, including 6401, for waterproof footwear; 6402, for footwear with uppers of rubber or plastic; 6403, for footwear with uppers of leather; and 6406, for parts of footwear. Heading 6405, for other footwear, does not apply because basket, or residual, provisions are only intended to encompass the classification of articles for which there is not a more specifically applicable subheading. Rollerblade, 282 F.3d at 1354.

are therefore appropriately classified heading 6404, and the Court turns to determining

the appropriate subheading for classification.

### B.     Proper Six-Digit Subheading is 6404.19

The first level of subheadings within heading 6404 divides the heading into two

categories: "Footwear with outer soles of rubber or plastics" and "Footwear with outer

soles of leather or composition leather." The record is clear that the outer soles of the

footwear at issue consists of rubber, so the choice falls to which subheading of rubber-

soled footwear the Classic Crochet boots should be assigned. The choice is between

"Sports footwear; tennis shoes, basketball shoes, training shoes and the like," or

"Other." The Classic Crochet boots are unquestionably not sports footwear, and

therefore the Court determines that they fall with the basket provision "Other"

subheading numbered 6404.19.

### C.     Proper Eight-Digit Subheading is 6404.19.35

#### 1.     Subheadings within 6404.19, HTSUS

Within 6404.19, HTSUS are found four potential subheadings at the next level.

The first two are easily dispensed with: "Footwear having upper of which over 50

percent of the external surface area . . . is leather" does not apply here, and "Footwear

designed to be worn over, or in lieu of, other footwear as a protection against [various

conditions]" is also inapplicable. The two potentially-applicable subheadings within

6404.19, upon which the parties focus their arguments, are "Footwear with open toes or

open heels; footwear of the slip-on type, that is held to the foot without the use of laces

or buckles or other fasteners [except protective footwear and except footwear having

foxing of rubber or plastics]" and the "Other" basket provision.

When choosing between a specific subheading and a basket provision, the basket

provision may only be employed if the merchandise is not covered by the more specific

subheading's terms. See Rollerblade, 282 F.3d at 1354. So the Classic Crochet boots can

only be classified under the "Other" subheading if the subheading for "footwear of the

slip-on type, that is held to the foot without the use of laces or buckles or other

fasteners" is inapplicable.

 2.   "Footwear of the Slip-on Type, That Is Held to the Foot without the
      Use of Laces or Buckles or Other Fasteners" Is Defined by the Lack
      of Fasteners, Which Allows Items to Be Easily Put on or Taken off

Upon consulting dictionaries and other sources, the Court concludes that the

subheading in 6404.19.35, HTSUS, includes footwear that falls under 6404.19 and which

can be easily and quickly donned due to the fact that one need not use a fastener of any

type to secure the footwear to the foot after putting it on.

Congress's language in the subheading leads to this construal in a straight-

forward manner. The Court concludes that the relative clause "that is held to the foot

without the use of [fasteners]" serves to explain and elaborate upon the phrase

"footwear of the slip-on type." The words "that is" which introduce the relative clause

are directly equivalent to the phrase *id est*, commonly abbreviated as "i.e.," and may be

rephrased as "in other words" with no change in meaning. The Court thus finds that the

tariff subheading at issue indicates that "footwear of the slip-on type" is, in other words,

footwear "held to the foot without the use of laces or buckles or other fasteners."

 The numerous dictionary definitions of "slip-on" provided by the parties, and

located by the Court, corroborate this construal in their articulations of the essential

characteristics of a slip-on. The Dictionary of Shoe Industry Terminology (excerpted at

Pl.'s Opp., Ex. 1) defines a slip-on as "[a]ny shoe into which the wearer merely slips the

foot, held without benefit of lacing, buckles or other fastening." The Complete Footwear

Dictionary (excerpted at Pl.'s Opp., Ex. 2) defines a slip-on as a "pump without lacings

or other fastenings" or "[a]ny shoe without fastenings." The adjective "slip-on" is used

"esp[ecially] of shoes or clothes" and means "having no (or few) fasteners and therefore

able to be put on and taken off quickly." New Oxford American Dictionary 1597 (2d Ed.

2005). It describes an item that can be "easily put on or taken off, as shoes without laces,

or a garment to be slipped on or off over the head." Webster's New World Dictionary of

the American Language 1340 (2d Coll. Ed. 1974). A slip-on is "an article of clothing that

is easily slipped on or off," and can include "a glove or shoe without fastenings" or "a

garment (as a girdle) that one steps into and pulls up"; one synonym is the word

"pullover." <u>Webster's Third New Int'l Dictionary</u> at 2144.

The lack of laces or fasteners is the essential characteristic uniting each dictionary definition for "slip-on." While the definitions vary as to the type of items that may be slip-ons—garments, girdles, gloves, and shoes—the absence of fasteners is determinative in each instance in whether an item is or is not a slip-on. The definitions, as a whole, indicate that it is this lack of any kind of fasteners that allows for the characteristic ease with which slip-ons can be put on and taken off.

The Court also finds that the definition of "slip-on" in the Customs publication <u>Footwear Definitions</u> is persuasive and warrants deference. That definition is centered around the characterization of slip-ons as footwear that lacks functional fasteners. This corresponds with the construal of the term slip-on suggested by the statute and in dictionaries. Given this, the Court sees no reason to upset Customs' considered and long-held definition (published specifically to assist the importing community in achieving correct classifications) of a slip-on as including a "boot which must be pulled on" and excluding "any boot or shoe with any laces, buckles, straps, snaps, or other closure." <u>Footwear Definitions</u>, 27 Cust. B & Dec. at 320.

Plaintiff's arguments counter to this analysis are unpersuasive. Plaintiff contends that "slip-on" can only refer to shoes. From this premise, Plaintiff argues that the Classic Crochet boot cannot be a slip-on because shoes and boots are mutually-exclusive

categories of footwear. Each step in this argument is flawed.

First, as already discussed above, the term "slip-on" is not defined solely as a kind of shoe, but can refer to garments, gloves, and girdles as well.  This argument is also undermined by the evidence in the record showing that a number of boots manufactured and sold by Plaintiff are commonly referred to as "slip-ons" on shopping websites, including Plaintiff's website. (See Def.'s Mem, Ex. D.) From this, it is clear that the term "slip-on" is commonly used to refer to both shoes and boots.

Second, shoes and boots are not necessarily mutually-exclusive categories. Even the definitions given by Plaintiff in its brief undercut this part of its argument. For example, The Dictionary of Shoe Industry Terminology defines "shoe" as "[a]n outer covering for the foot." (Pl.'s Opp. at 4 and Ex. 1.) And The Complete Footwear Dictionary defines a shoe as "[a] protective and/or decorative foot covering." (Id.) While both of these dictionaries note that "shoe" **usually** refers to low-cut footwear as opposed to boots (see id.), Plaintiff incorrectly seeks to turn this note about ordinary usage into an inviolable part of the definition of "shoe." In common use, "shoe" is often a generic term for footwear, without regard to whether that footwear extends above the ankle. See Webster's New Collegiate Dictionary 1063 (1st Ed. 1981) (defining "shoe" as "an outer covering for the human foot usu[ally] made of leather with a thick or stiff sole and an attached heel."). To give some examples, "congress shoe," "congress gaiter,"

"gaiter," and "romeo" all denote shoes that cover the ankle. See Webster's Third New

Int'l Dictionary at 479 (congress gaiter, congress shoe), 929 (gaiter), 1970–71 (romeo).

Because the Court rejects Plaintiff's contentions that slip-ons must be shoes and that

shoes cannot cover the ankles, the Court also rejects Plaintiff's erroneous conclusion

from these premises that the Classic Crochet boots cannot be slip-ons. Plaintiff's narrow

reading of the term "slip-on" is unjustifiably cramped.

Plaintiff also seems to suggest that an item cannot be a "slip-on" if the wearer

uses his or her hands to assist in donning or doffing it. For example, Plaintiff's

Opposition, at page 5, describes the Classic Crochet boots by stating that they "cannot

be slipped-on, . . . they must be pulled on with both hands[.]" On page 6 of Plaintiff's

Opposition, Plaintiff cites page 72 of Defendant's deposition of Peter Young, Senior

Footwear Developer for Deckers (in the record as Exhibit E to Defendant's

Memorandum), in which Mr. Young expressed the view that the terms "slip on" and

"pull on" are contradictory. But this assertion runs counter to the examples of "slip-

ons" that appear in dictionaries. The definition given in Webster's Third New Int'l

Dictionary, for example, includes garments such as gloves and girdles which must be

pulled onto the body using the hands. It would be contrary to common sense and

meaning to limit the term "slip-on" to footwear able to be put on or taken off without

using the hands, but to apply the term "slip-on" to other garments requiring use of the hands.

3.  <u>Classic Crochet Boots, Lacking Fasteners and Containing More Than 10% by Weight of Rubber, Are Properly Classified Under 6404.19.35, HTSUS</u>

The parties agree that the UGG Classic Crochet boot is held to the foot without laces or buckles or other fasteners. Given that lacking any kind of fasteners is definitive of "footwear of the slip-on type," the Classic Crochet boots must be classified within the subheading for "footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners" rather than the basket provision Other within which lies Plaintiff's proposed classification, 6404.19.90. <u>See</u> GRI 6; <u>see also</u> <u>Rollerblade</u>, 282 F.3d at 1354.

As a final matter, the Court notes that the parties do not dispute that the Classic Crochet boots contain more than 10 percent by weight of rubber.[6] Thus, when properly categorized under the "footwear of the slip-on type" subheading, the Classic Crochet boots must fall within the eight-digit level subheading at 6404.19.35. The Court therefore finds that Customs correctly classified the merchandise in 6404.19.35.

_____

[6] This is consistent with the Court's own examination of the representative sample of the merchandise at issue, submitted as Exhibit A to Plaintiff's Memorandum.

## Conclusion

For the foregoing reasons, the Court determines that no issue of material fact

exists regarding the correct classification of the Classic Crochet boots, and Customs is

entitled to summary judgment affirming proper classification of the merchandise under

6404.19.35, HTSUS. Accordingly, judgment will issue for Defendant.


                                                    _____/s/Gregory W. Carman_____
                                                      Gregory W. Carman, Judge

Dated: April 24, 2012
          New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **DECKERS OUTDOOR CORP.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. |

**Before: Gregory W. Carman, Judge**

**Court No. 08-00410**

## <u>JUDGMENT</u>

Upon consideration of all papers filed by the parties in this proceeding, upon due deliberation, and in accordance with the Opinion of the Court issued today in this matter, it is hereby

**ORDERED** that Defendant's classification of the subject merchandise, the UGG Classic Crochet boot, is affirmed; and it is further

**ORDERED** that Defendant's motion for summary judgment is granted as to Defendant's claim that the UGG Classic Crochet boots are classifiable under 6404.19.35 of the Harmonized Tariff Schedule of the United States; and it is further

**ORDERED** that judgment be, and hereby is, entered for Defendant.

_____/s/Gregory W. Carman_____
Gregory W. Carman, Judge

Dated:  April 24, 2012
    New York, New York